UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| TAMEKA LOWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF MANCHESTER, GEORGIA, | ) |
| CHRIS CARPENTER, | ) |
| JASON NORRIS, | ) |
| | ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff Tameka Lowe brings this complaint under 42 U.S.C. § 1983 and Georgia law against Defendants City of Manchester, Chris Carpenter and Jason Norris.

# PARTIES

1. Plaintiff Tameka Lowe is an adult resident of the State of Georgia.

2. The City of Manchester, Georgia, is a municipal corporation located in Manchester County, Georgia.

3. Chris Carpenter was employed by the City of Manchester as a law enforcement officer at all times relevant to this complaint.

4. Jason Norris was employed by the City of Manchester as a law enforcement officer at all times relevant to this complaint.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question.

6. Upon service of process, this Court acquires personal jurisdiction over Defendants under Fed. R. Civ. P. 4(k).

7. Venue is proper in the Newnan Division of the Northern District of Georgia under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

8. Plaintiff was arrested on April 28, 2022, by Defendants Carpenter and Norris.

9. Plaintiff's arrest occurred at 10:30 p.m. on April 28, 2022.

10. Plaintiff's arrest occurred at 1121 Warm Spring Highway, located in the City Manchester, Georgia.

11. When Defendant Carpenter first encountered Plaintiff, Plaintiff was sitting inside her car while parked in the parking lot of a business owned by Plaintiff.

12. Plaintiff's car was legally parked.

13. Plaintiff was not driving at the time Defendant Carpenter initiated contact with her, and she did not commit any traffic violation that would have justified a traffic stop.

While speaking to Plaintiff, Defendant Carpenter indicated to Plaintiff that although he wanted to speak with her he, nevertheless, did not believe that she had committed any crime.

14. Shortly after Defendant Carpenter began speaking with Plaintiff, Defendant Norris arrived in a separate patrol car. Norris exited the car and spoke with Plaintiff along with Defendant Carpenter.

15. During the entirely of their interaction with Plaintiff, Plaintiff did not engage in any action that caused Defendants Carpenter or Norris to be suspicious that she committed a crime or was going to commit a crime.

16. Plaintiff did not appear to be nervous.

17. Plaintiff did not make any furtive movements.

18. Plaintiff did not appear to be under the influence of any intoxicating substance.

19. At the time of their encounter with Plaintiff, neither Defendant Carpenter nor Norris were aware of any facts upon which to suspect that Plaintiff possessed a weapon.

20. Defendants Carpenter and Norris were not aware of specific facts upon which to reasonably conclude that Plaintiff posed any danger to themselves or others.  did not believe that Plaintiff posed any danger to themselves or others.

21. At the time Defendants Carpenter and Norris made contact with Plaintiff, Plaintiff remained free to terminate the encounter and leave.

22. Defendants nevertheless insisted that Plaintiff provide identification to them.

23. At the time of that demand, Defendants Carpenter and Norris did not suspect Plaintiff of committing a crime and no evidence existed that could cause Defendants Carpenter and Norris to believe that Plaintiff was involved in the commission of a crime.

24. At the time of the demand for identification, Defendants Carpenter and Norris claimed only that there had been a prior theft from a nearby business.

25. Defendants Carpenter and Norris had no basis to believe that Plaintiff or Plaintiff's vehicle matched the description of any suspect or vehicle alleged to have been involved in that prior theft.

26. On the contrary, Defendant Norris specifically knew that Plaintiff was a member of the community, had encountered Plaintiff previously, and knew that Plaintiff's aunt was a member of Manchester City Council.

27. Defendant Norris also knew that Plaintiff previously raised her concerns to the chief of police that the City of Manchester had an unconstitutional policy of requiring individuals to provide identification even when police had no particularized reasonable suspicion that an individual was involved in a criminal act.

28. The chief of police for the City of Manchester understood Plaintiff's concern was that the City's officers were demanding identification in absence of any suspicion that the person was involved in a crime.

29. The chief of police for the City of Manchester affirmed that a person was not entitled to refuse to provide identification even if that person was not suspected of a crime.

30. Under that City practice, anyone who refused to provide identification could be arrested for obstruction of a law enforcement officer under Manchester City Code § 50-12.

31. The practice of requiring an individual to provide identification to law enforcement officers was established by and approved by the chief of police for the City of Manchester.

32. The chief of police is the final decision-maker in setting all police policies within the City. The City of Manchester did not require approval from any City

official or entity other than the chief of police in order for policies of the chief of police to be established for the operations of the City police department.

33. Defendants Carpenter and Norris acted to question and then arrest the Plaintiff as a result of and pursuant to the City's practice of requiring individuals to provide identification without regard to whether there is any suspicion that the individual was involved in a crime.

34. Plaintiff's arrest caused emotional distress, loss of liberty, and other damages.

## COUNT I

35. Count I of Plaintiff's complaint is alleged against Defendants Carpenter and Norris in their individual capacities.

36. As set forth above, Defendants Carpenter and Norris arrested Plaintiff without probable cause, and in violation of clearly established law and therefore violated the Fourth Amendment.

## COUNT II

37. Count II of Plaintiff's complaint is alleged against the City of Manchester.

38. As set forth above, the City of Manchester had an established practice that permitted its officers to require identification from any person for any reason, and

in absence of any particularized, reasonable suspicion that the person was involved in a crime.

39. The City's policy and practice were the moving force behind Plaintiff's arrest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks this Court to:

a. Assume jurisdiction over this matter;

b. Provide for a jury trial upon all claims and issues so triable;

c. Award Plaintiff nominal, compensatory, and special damages against all Defendants in an amount to be proven at trial;

d. Award punitive damages against Defendants Carpenter and Norris in an amount to be proven at trial;

e. Award Plaintiff reasonable attorney's fees and costs of litigation under 42 U.S.C. § 1988;

f. award such other relief to which Plaintiff is entitled either at law or in equity, whether explicitly pleaded or not.

This 19th day of April, 2024.

**Jeff Filipovits**
Jeff Filipovits
Georgia Bar No. 825553

SPEARS & FILIPOVITS, LLC
315 W. Ponce de Leon Ave., Ste. 865
Decatur, Georgia 30030
404-905-2225
jeff@civil-rights.law

**Wingo F. Smith**
Wingo F. Smith
Georgia Bar No. 147896

wingo@civil-rights.law